AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
The persons of KEONI MAE MAE WILSON, DOB: XX-XX-1998 and LANCE DANIEL JONES, JR, DOB: XX-XX-1986

)
)
)
)
)
)

Case No.  MJ21-332

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
KEONI MAE MAE WILSON, DOB: XX-XX-1998, approximately 5'11" tall, approximately 200 lbs.
LANCE DANIEL JONES, JR, DOB: XX-XX-1986, approximately 5'7" tall, approximately 200 lbs.

located in the _____ Western _____ District of _____ Washington _____, there is now concealed *(identify the person or describe the property to be seized)*:

Buccal swabs for DNA analysis in the form of saliva.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. § 113 (a)(3) & 113(a)(6) | Assault with a dangerous weapon; resulting in serious bodily injury |
| Title 18, U.S.C. § 922(g) & 922(f) | Unlawful possession of a firearm by a convicted felon or unlawful user of or addict to any controlled substance; possession of stolen firearm or ammunition |

✓ See attached Affidavit of Special Agent Getsch continued on the attached sheet

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
Applicant's signature

Terry Getsch, Special Agent, FBI
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:  06/04/2021

_____
Judge's signature

City and state:  Seattle, Washington     S. Kate Vaughan, United States Magistrate Judge
*Printed name and title*

USAO: 2021R00300

# AFFIDAVIT

STATE OF WASHINGTON    )
                       )  ss
COUNTY OF WHATCOM      )

I, Terry Getsch, a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), having been duly sworn, state as follows:

## INTRODUCTION AND PURPOSE OF AFFIDAVIT

1. The Federal Bureau of Investigation (FBI) is conducting an investigation into whether KEONI MAE MAE WILSON ("WILSON") and/or LANCE DANIEL JONES JR ("JONES") violated Title 18, United States Code, Section 113(a)(3) (assault with a dangerous weapon); Title 18, United States Code, Section 113(a)(6) (assault resulting in serious bodily injury); Title 18, United States Code, Section 922(g) (unlawful possession of a firearm by a convicted felon or unlawful user of or addict to any controlled substance); and Title 18, United States Code, Section 922(f) (possession of a stolen firearm or stolen ammunition). In furtherance of my investigation, I am requesting search warrants for buccal swabs from WILSON and JONES for Deoxyribose Nucleic Acid ("DNA") analysis. The swabs will ultimately be forwarded to the FBI Laboratory in Quantico, Virginia, which has and is examining evidence associated with this investigation.

## INTRODUCTION AND AFFIANT'S BACKGROUND

2. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since August 2018. I am assigned to the Seattle Division of the FBI under the Bellingham Resident Agency and the FBI's Northwestern Safe Trails Task Force ("NWSTTF"). My primary responsibilities as a Special Agent includes investigations involving violent crimes and other federal crimes on the Lummi Indian Reservation ("Lummi") and other Indian reservation in Northwest Washington. Prior to becoming a Special Agent, I was employed since 2014 as a municipal police officer and detective in the

Affidavit of Terry Getsch - 1
USAO 2021R00300

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

state of Georgia. I have participated in numerous investigations including, but not limited to assaults, thefts, possession of stolen property, illegal possession of firearms and ammunition and various other criminal violations. During these investigations, I have executed and assisted in in the execution of search warrants for the seizure of evidence to include DNA evidence and comparative DNA samples.

3. The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

4. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## PROBABLE CAUSE

5. On March 7, 2021, at approximately 3:03 a.m., the LNPD dispatch received a report that someone had been shot at a residential location on Lummi Shore Drive (the "INCIDENT LOCATION"). The responding officers were aware that that the INCIDENT LOCATION was a known spot for illegal drug activity, and I am aware that this location is within the exterior boundaries of the Lummi Indian Reservation, a federally recognized Indian reservation. The INCIDENT LOCATION consisted of a single story residential home surrounded by approximately a dozen occupied and unoccupied travel trailer campers and vehicles. Some of these trailers and vehicles are dilapidated and unoccupied or unused.

6. Responding Officer Galt and Officer James located the victim ("John Doe") lying on the ground approximately 30 ft from the residence between some vehicles and travel trailers. A group of people were around in the area, and a male (referred to by the initials

"WG" to protect his identity) was tending to John Doe's injuries and later provided a statement to law enforcement. The officers rendered medical aid and identified what they believed to be gunshot wounds Doe has suffered. Doe was having difficulty breathing, and he was disoriented and confused. The officers continued medical care and transferred John Doe to arriving emergency medical personal. Doe was then transported to the Peace Health St. Joseph Emergency Room in Bellingham, WA.

7. LNPD command staff and Detective Sergeant (FBI Task Force Officer "TFO") Richard Hart notified me of the incident, and SA Milas Howe and I assisted with the follow up investigation of this shooting.

8. A resident (referred to by the initials "JC" to protect her identity) granted consent to search of the INCIDENT LOCATION, which was searched and photographed. No firearms, shell casings, bullet holes or projectiles were located. Based on review of the crime scene, and my training and experience, I believe the shell casings may have been picked up or a firearm that did not expend the casing (i.e. a revolver) was used during the shooting.

9. LNPD and FBI personnel conducted an area canvas and interviewed everyone we could locate in or around the travel trailers and residence at the INCIDENT LOCATION. Witnesses heard three to six gunshots right before John Doe was found shot. No one identified a suspected shooter.

10. WG explained he was inside of the house when he heard six gunshots. He went outside and found John Doe standing where LNPD Officer's had located him. Seconds after WG walked outside, Doe collapsed on the ground. WG provide medical aid to Doe, and another witness (referred to by the initials "SM" to protect her identity) contacted 911.

11. OFC Galt visited the hospital following John Doe's intake and spoke with an attending doctor. The doctor advised that John Doe has suffered five gunshot wounds

Affidavit of Terry Getsch - 3
USAO 2021R00300

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

including a gunshot to his left shoulder, left arm, two to his right leg and one to his lower left abdomen. John Doe's iliac artery was struck as a result of one of the gunshots. Doe was expected to recover, but he was unavailable to be interviewed for several days following the incident because he was on a ventilator and having surgeries and medical complications.

12. On March 8, 2021, I interviewed an individual who had a close relationship with John Doe (referred to as "RG" to protect her privacy). RG advised she had received Facebook messages from an individual (referred to as "LG" to protect his identity) indicating that WILSON had shot Doe. RG later provided me a screen shot of messages from LG that corroborated this. I am familiar with LG and had previously contacted him at an adjacent neighboring property during the area canvas interviews directly following the shooting. LNPD Detective Daryl James and I found LG under suspicious circumstances hanging out in a blocked-in vehicle with three other adult males. LG informed me at the time that he was an associate of John Doe's, and he and the other three males advised they did not know who shot Doe. LG provided me a telephone number for future contact. I have attempted telephone contact with LG, and I have not been able to contact him or interview him further. During Interviews with WG after the shooting, WG informed me that he believed LG and John Doe were associated with the Crips gang.

13. I subsequently learned from hospital staff that no bullets or fragments were removed from John Doe's body. I reviewed medical records from Doe's medical treatment, and treating medical staff identified in their reports that Doe's injuries were consistent with that of gunshot wounds, and that foreign objects located in his body were consistent with that of bullets or bullet fragments.

14. On or about March 11, 2021, TFO Hart and I attempted to interview John Doe at the hospital. Unfortunately, he was in and out of consciousness and was unable to clearly

Affidavit of Terry Getsch - 4
USAO 2021R00300

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

communicate. Doe insinuated that he did not want to provide information to law enforcement, but his communications were extremely short, muffled and unclear.

15. On March 12 2021, TFO Hart and FBI Special Agent Milas Howe contacted John Doe and interviewed him. He advised that WILSON had shot him with what he thought was a .22 caliber black pistol. WILSON had been trying to make a name for himself as a Crip gang member on Lummi. Because of Doe's pain level and the issuance of pain medication, the interview was stopped.

16. TFO Hart and I had previously investigated WILSON under a separate FBI shooting investigation on Lummi. During this prior investigation WILSON informed us that he had possessed and discharged a sawed-off shotgun during an altercation that resulted in a third party being inadvertently shot. I am aware from this prior investigation that WILSON is an enrolled member of the Lummi Nation.

17. On March 18, 2021, TFO Hart and I interviewed John Doe at the hospital. He was conscious and alert at this time, and there were no obvious concerns over his level of consciousness or ability to be interviewed. Doe could not recall everything that had happened the night of the shooting, but provided the following:

18. Doe is not a tribal member, and he identified that he had been a Rolling 60's Crip gang member his whole life. Doe and WILSON had known each other since May 2020. They had argued in the past because WILSON was claiming to be the founder of the original Crip gang on Lummi, and Doe had issues with this because he knew that the first Lummi Crip gang was the Rolling 60's. Doe did not want to teach WILSON to be a Crip, and thought WILSON wanted to become a member the right way. After these disagreements WILSON and Doe agreed to stay away from each other.

19. Approximately twenty-four hours before he was shot, John Doe found WILSON and a native male sleeping in a car in the driveway of the INCIDENT

Affidavit of Terry Getsch - 5
USAO 2021R00300

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

LOCATION. Doe did not want to reveal the identity of the native male. Doe said that when he tried to tell the unidentified male that he didn't need to sleep in the car, and WILSON told Doe he wasn't native, and it was none of his business.

20.   On the evening of the shooting, John Doe had been hanging out at woman's house on Lummi. He was drunk when he got a ride to the main residence at the INCIDENT LOCATION to get his car keys for his vehicle that was parked there. The previous day, Doe had smoked methamphetamine, and that evening, he had smoked marijuana and drank most of a bottle of Crown Royal alcohol. After walking out to his car that was parked a few feet away from where he was found shot, Doe heard someone behind him say, "Who is that?" He turned around and saw a person approximately six feet away. He immediately saw a flash and was shot first in his left wrist/arm and then the rest of his body. The doctors told Doe he was shot a total of six times, but he thought he had been shot only three times. Doe explained he could not see the shooter, and he was not able to identify the shooter. Additionally, none of the bullets that had struck Doe were removed from his body. The only person that Doe had issues with at the time was WILSON, and he was the only person he believed would have shot him. Doe viewed WILSON's Facebook profile and identified a photograph of WILSON as who he was referring to. This photo depicted who TFO Hart and I know to be WILSON.

21.   On March 29, 2021, LNPD Officer Galt and Officer Rauch responded to a report that WILSON was criminally trespassing at a Lummi convenience store located near Slater Road and Interstate 5. The store is owned by the Lummi Nation and is located on tribal trust land outside of the original boundaries of the reservation. WILSON had a history of committing thefts at this store, and an employee at the store contacted police because WILSON had previously trespassed on the property. Officer Galt approached and contacted WILSON while he was seated in the front right passenger seat of a sedan parked outside of

Affidavit of Terry Getsch - 6
USAO 2021R00300

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the store. WILSON attempted to provide Officer Galt the false name of his brother. Officer Galt was familiar with WILSON's brother and he was aware that this information was false. WILSON was detained and searched for weapons. No weapons were located, but a blue handkerchief was observed in his pocket. I am aware through training and experience that blue handkerchiefs are commonly used as "colors" or symbols of affiliation with the Crip gang or its affiliated gangs.

22. Officer Rauch contacted the driver/owner of the vehicle (referred to by the initials "FB" to protect her identity). FB knew WILSON and had seen him walking on Lummi Shore Road 20-30 minutes before. It was cold outside, and WILSON was hitchhiking, so FB picked WILSON up. She asked WILSON if he had any knives or weapons, and WILSON told her no. FB reviewed the contents of her vehicle and identified that WILSON had been sitting in the front right passenger seat. FB located a tan backpack on the front right passenger seat floorboard that she thought had belonged to WILSON. FB remembered that WILSON had something on him when she picked him up, and the bag did not belong to her. FB did not want officers to search her vehicle, but she gave the tan backpack to Officer Rauch. WILSON and his property were taken to the LNPD.

23. TFO Hart and I attempted to interview WILSON at the LNPD station. I read WILSON his Miranda rights from an FD-395 Advise of Rights form, and he clearly requested his attorney be present for questioning. Consequently, no further questioning was conducted.

24. LNPD obtained authorization to extradite WILSON for an outstanding Bellingham warrant. During processing for the arrest and a review of the property WILSON would be able to take to the jail, WILSON claimed ownership of a cell phone and denied ownership of the tan Carhartt backpack. Pursuant to LNPD policy and standard procedure, TFO Hart conducted an inventory of the backpack. During the inventory, TFO Hart located a

Affidavit of Terry Getsch - 7
USAO 2021R00300

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

revolver wrapped in two plastic gloves inside of the bag. TFO Hart stopped his search and obtained a Lummi Nation search warrant on March 31, 2021 for the bag and WILSON's cell phone.

25. On March 31, 2021, TFO Hart and I executed the Lummi search warrant on the tan backpack. The following items were discovered and placed in FBI evidence following the search:

1B1 - Tan Carhartt Backpack

1B2 - Orange prescription bottle (label removed) containing (10) small round pills marked with "M" (suspected of being counterfeit Fentanyl pills)

1B3 - Clothes and assorted items including Carhartt size 36 gray cargo shorts, black USB-C cable, open condom wrapper, prescription bottle label, Reebok XL gray T-shirt, pink lighter, tin foil, (3) face masks, Fritos dip, spoon, eye drops and cologne

1B4 - Ruger GP 100 .357 Magnum 7 Shot Revolver

1B5 - (4) Brass .38 Special & (1) Nickel .38 special/.357 live ammunition rounds

1B6 - (2) Plastic gloves from pistol

26. I am aware that WILSON's cell phone uses a USB-C charging/data port that is compatible with the USB-C cable located in the backpack. Furthermore, the shorts, shirt, condom wrapper and cologne indicated that the bag may have belonged to WILSON. The pill bottle and suspected Fentanyl was submitted to the DEA Laboratory for latent print examination and drug testing.

27. The plastic gloves (1B6) were found wrapped around the barrel and grip of the revolver (1B4). Based on my training and experience, I believe the gloves were used to handle the firearm and prevent the transfer of fingerprints onto the firearm while it was used during the commission of a crime. The firearm, gloves and ammunition were sent to the FBI Laboratory for DNA collection and latent print examination.

Affidavit of Terry Getsch - 8
USAO 2021R00300

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

28. On May 05, 2021, the FBI Laboratory Latent Print Operations Unit notified me that latent print examination of the revolver (1B4) was complete, and a latent print had been developed. The print was identified to belong to LANCE JONES JR. TFO Hart is familiar with JONES and conducted an LNPD records query that identified numerous LNPD contacts and arrests. I reviewed a Washington state criminal history and judgement and sentencing documents for JONES, which shows that he is a convicted felon in Washington. JONES felony convictions included but were not limited to a Class B Felony Burglary and Class C Felony Bail Jumping in Whatcom County Superior Court (Case #: 141012350) on April 16, 2015. JONES was sentenced to 12 months and 1 day of prison for each offence.

29. The ammunition (1B5) was found loaded inside of 1B4. A database check of 1B4 identified the firearm as stolen out of Bellingham, WA. LNPD confirmed with Bellingham Police Department (BPD) that the firearm was stolen, and I reviewed BPD reports for the matter. The revolver was reported stolen from a vehicle during the night of February 20, 2021 and February 21, 2021 along with a box of 20-40 .38 special target ammunition rounds. I am familiar through training and experience that a .357 Magnum is capable of shooting .357 and .38 special ammunition. Additionally, the reported type of ammunition stolen matched the type of ammunition (1B5) loaded in the revolver (1B4).

30. On April 1, 2021, Bureau of Alcohol Tobacco and Firearms Special Agent Catherine Cole notified me that a preliminary review of photographs of the seized revolver (1B4) and ammunition (1B5) indicated that both the firearm and ammunition had been manufactured outside of the state of Washington in the states of Minnesota or Arizona. They had therefore traveled in or affected interstate commerce.

31. On May 19, 2021, I telephonically interviewed the owner of the revolver (referred to by the initials "LP" to protect his identity) who had reported the revolver stolen to BPD. LP explained that the he purchased the revolver new in Juneau, Alaska in 2019. He

**Affidavit of Terry Getsch - 9**
USAO 2021R00300

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

stated he had seven rounds of .38 special hollow point ammunition with nickel-plated shells in the case with the revolver when it was stolen, and that there were two boxes of .38 special target ammunition with brass shell casings that were stolen with the revolver. LP did not know any individuals by the name of KEONI WILSON or LANCE JONES. The description of the stolen ammunition matches the ammunition (1B5) collected from the revolver. This information additionally corroborated that the revolver (1B4) had traveled in interstate commerce, and that the fingerprint found on the revolver was placed there after JONES had been sentenced for his felony convictions in 2015.

32. Based on this information, I believe that JONES had possessed the stolen revolver that traveled or affected interstate commerce after he had been convicted for a crime punishable by imprisonment for a term exceeding one year when he possessed the firearm. It is unknown to investigators why or exactly when LANCE JONES possessed the revolver (1B4), or why possession of the firearm may have been transferred between WILSON and JONES.

33. Pursuant to the Lummi Nation search warrant issued on March 31, 2021, TFO Hart attempted to utilize an FBI available cell phone forensic software to analyze and downloaded WILSON's cell phone. The device was locked, and the available software did not have a device profile capable of downloading the device. On May 28, 2021, a federal search warrant was issued by Magistrate Judge Brian A. Tsuchida for WILSON's locked cell phone, and FBI analysis of the device is currently being pursued.

34. LNPD Detective James has reviewed additional recorded jail phone calls from WILSON that included conversations with an individual whose voice Detective James recognizes as that of JONES. These calls took place on or about April 17 and 19, 2021. In the calls, WILSON explained that he is facing tribal charges for Attempted Homicide and Unlawful Possession of a Firearm and is looking at six years in prison. WILSON told

Affidavit of Terry Getsch - 10
USAO 2021R00300

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

JONES that he should have taken JONES' advise to chill, and JONES shouldn't have let him leave. JONES asked WILSON if the charges are Lummi or State charges, and WILSON explained that the feds might pick up the case. JONES told WILSON that WILSON didn't do anything, and he shouldn't talk to anyone. WILSON states that he thinks they got him with the "piece," and JONES responded that they could have got the piece anywhere. I am aware that a "piece" is a common slang term used for a pistol or firearm. JONES and WILSON's conversation regarding the "piece" may be in reference to the revolver (1B4) that is in the FBI's possession.

35. The FBI Laboratory DNA Casework Unit examined the revolver (1B4) and gloves (1B6) seized during this investigation. During their examination, the laboratory swabbed the items and conducted an analysis on the swabs. Both the gloves and the revolver were identified to contain a mixture of DNA, including male DNA suitable for comparison purposes. Moreover, the laboratory explained that if further DNA comparison was requested, they would need a known blood or buccal (saliva) sample from the subject(s) of the comparison. Based on the foregoing evidence, I believe probable cause exists for obtaining the DNA of WILSON and JONES so that their DNA can be compared to the DNA collected from the revolver and gloves.

**BACKGROUND ON DNA**

36. Based on my training and experience, I know that each human has his or her own Deoxyribose Nucleic Acid (DNA) markers, and that, since the inception of the use of DNA in forensic science, DNA analysis has been widely used. Humans may leave traces of their DNA in various forms, including but not limited to semen, sweat, blood, hair and saliva. Additionally, through my training and experience, I know that crime laboratories can identify the source of DNA obtained from a crime scene by the comparison of that DNA to the known DNA of person(s) from whom it may have originated.

Affidavit of Terry Getsch - 11
USAO 2021R00300

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

37. In this case, it will be useful to compare the DNA of WILSON and JONES with DNA recovered from the revolver (1B4) and gloves (1B6) seized by LNPD and the FBI. A DNA comparison will assist in this investigation in determining the likelihood that WILSON or JONES contributed to the DNA found on the revolver and gloves. Based on my training and experience, I know that DNA is typically collected from a person by rubbing one or more long cotton swabs against the inner cheek of the mouth. The swabs are then preserved by being placed in a sterile container and sealed. If this search warrant application is approved, I will follow these protocols by swabbing the inner cheek of WILSON and JONES with a long cotton swab, provided to me in a sterile form. I will then place the cotton swab in a sterile container and seal the container. I will then place the sterile container containing the swab into another container that will be sealed and sent to a crime laboratory for comparison.

//
//
//

Affidavit of Terry Getsch - 12
USAO 2021R00300

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

38. Based on the above facts, I believe there is probable cause for the issuance of a search warrant for the buccal swabs of the persons of KEONI MAE MAE WILSON and LANCE DANIEL JONES JR. If this search warrant is signed, then the seizure of WILSON and JONES pursuant to this search warrant will be limited to the swabbing of their inner cheeks. I believe that the DNA analysis will provide valuable evidence material to this ongoing investigation into whether WILSON or JONES violated Title 18, United States Code, Section 113(a)(3) (assault with a dangerous weapon); Title 18, United States Code, Section 113(a)(6) (assault resulting in serious bodily injury); Title 18, United States Code, Section 922(g) (unlawful possession of a firearm by a convicted felon or unlawful user of or addict to any controlled substance); and Title 18, United States Code, Section 922(f) (possession of a stolen firearm or stolen ammunition). I therefore petition the Court for the issuance of a search warrant authorizing taking buccal swabs of WILSON and JONES for DNA evidence purposes as described above.

TERRY GETSCH, Affiant
Special Agent, FBI

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit by telephone on this 4th day of June 2021.

S. KATE VAUGHAN
United States Magistrate Judge

Affidavit of Terry Getsch - 13
USAO 2021R00300

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970